317 So.2d 526

**Ronald Harold HUGHLEY, alias**

v.

**STATE.**

**5 Div. 263.**

Court of Criminal Appeals of Alabama.

May 6, 1975.

Rehearing Denied May 27, 1975.

Richard D. Lane, Auburn, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

TYSON, Judge.

Following the remandment of this cause for a hearing with counsel on the merits of the appellant's Youthful Offender Petition, the trial court then proceeded in accordance with the mandate of this court, and has sent this court a return to the remand, showing full compliance. After full investigation by the probation officer, and a hearing on the merits of the appellant's petition, the trial court then entered the following findings:

"THE COURT: Well, the Court is of the opinion that the defendant was properly tried as an adult, that he was not entitled to treatment as a youthful offender in this case, number 804, where he was indicted and tried for burglary in the second degree; that he had formerly been convicted in this same Court on a

**560**

charge of forgery, and he was sentenced by Honorable G. H. Wright, Jr., Associate Judge of this Court, to imprisonment in the penitentiary for a term of three years in that forgery case. Judge placed him on probation, and while he was on probation, he committed this second offense, burglary in the second degree.

"In the opinion of this Court, he was not entitled to treatment as a youthful offender, and is not now entitled to treatment as a youthful offender."

We are of the opinion that the mandate of *Morgan v. State,* 291 Ala. 764, 287 So. 2d 914, has now been fully followed.

I

We will now review the merits of this appeal. Jessie Lee Bryant testified that he was the owner and operator of Bryant's Washateria and Grocery Store, located at 404 Hardaway Avenue, in Opelika, Alabama. He testified that on the evening of April 8, 1974, he closed his business about 7:00 that evening and barred the door between the washateria and grocery store. He testified further that he ran a string through the bottom of one of the dryers into the grocery store where the thread was attached to a pencil, which he placed into the dial system of the telephone. He testified that he dialed all except the last digit of his home telephone number so that should someone come into either store they would strike the cord, which would immediately pull the pencil from the telephone dial system, causing the telephone to ring his home telephone. Mr. Bryant further testified that about 2:00 on the morning of April 9, 1974, his telephone rang at home, and that upon answering he could not get a reply over his telephone. From the record:

"Q. Okay. What happened then?

"A. I got up and I answered and I didn't get any answer, and then I just put on my clothes and called the police.

"Q. And you say this was about 2:00 o'clock in the morning?

"A. Yes, it was about 2:00 o'clock.

"Q. And would this be the morning of April the 9th, the next day?

"A. Yes, sir.

"Q. After you called the police, what did you do, if anything?

"A. Well, I called them and they said they'd be right on out, and then I drove on around, kinda slow like, I wanted the police to be there when I got there, and so the police was there.

"Q. And what did you do when you arrived?

"A. Well, I sat there a minute or two until about two cars and about three or four polices had gone in, and then I went in.

"Q. When you arrived at your store, were the lights in the washateria on or off?

"A. They was on.

"Q. When you left the store that evening, did you leave the lights on, or did you turn them off?

"A. I turned them off."

Mr. Bryant further testified that he gave the key to his business to two police officers who answered the call, and that they then went into the washateria. He testified that the door between the washateria and the grocery store was open, and that the bar had been removed which had been placed across the door. He noticed that there was a hole inside the door, and that there were splinters on the floor. He further noticed that part of the door frame had been broken off. Mr. Bryant testified that, upon looking in the direction of the washers and dryers, he observed the appellant seated on the floor, and that a companion was apprehended behind the hot water heater.

Opelika Police Officer John T. Pruitt testified that, in response to a telephone call received on the early morning of April 9, 1974, he and Lt. Florence went to Bryant's Grocery and Washateria shortly after 2:00 in the morning. He testified that he met Mr. Bryant there and noticed that the door to the washateria was partially open. He stated that he turned on the light switch inside the washateria and found one William Moody hiding behind the water heater, and that a hawk-billed knife was found on the floor near where Moody was standing. He placed Moody under arrest. He further testified that part of the door frame had been pulled off, and that a cross bar, which had been placed across the door which lead into the grocery store, had been removed, that there was debris on the floor and a piece of molding had been torn off. He further testified that he and the other officer made several photographs of the interior of the premises, and these were admitted in evidence by the trial court. The appellant was found near a dryer in one corner of the building, and was placed under arrest.

The appellant's motion to exclude the State's evidence was overruled by the trial court. The appellant presented no testimony at trial.

## II

Appellant first contends that the trial court committed error in qualifying the venire in this cause when it asked the question if any member of the venire had a fixed opinion against penitentiary punishment.

■ We are of the opinion that no error here occurred, as the trial court properly asked this question of the prospective jurors under the provisions of Title 30, Section 57, Code of Alabama 1940. Moreover, no juror responded in reply to this inquiry by the trial judge.

## III

Appellant also asserts as error the overruling of his motion to exclude the State's evidence, stating that the State failed to prove a prima facie case.

In *Eason v. State,* 48 Ala.App. 471, 265 So.2d 913, we find:

"The applicable elements of second degree burglary are: (1) breaking, (2) entering, (3) with intent to steal or to commit a felony. The evidence, without contradiction, shows the first two ingredients. *Behel v. State,* 40 Ala.App. 689, 122 So.2d 537. From *Behel,* this Court, per Cates, J., stated: ' "The jury may reasonably infer intent to steal from the mere presence of the accused in the shop in circumstances showing a breaking and entering in the night. . . . " ' [Cases cited.]"

Judge Harris, speaking for a unanimous court, in *Burleson v. State,* 52 Ala.App. 399, 293 So.2d 317, observed:

"We are unwilling to hold that the evidence in this case is insufficient to establish the essential elements of the crime for which appellant stands convicted. The *corpus delicti* is a fact, proof of which may be shown by circumstantial evidence, and if there is a reasonable inference to prove its existence, the court should submit to the jury for consideration the question of the sufficiency and the weight of the evidence tending to support that inference. *Hines v. State,* 260 Ala. 668, 72 So.2d 296."

■ It is clear here that the trial court properly denied the appellant's motion. *Creel v. State,* 53 Ala.App. 504, 301 So.2d 267; *Hare v. State,* 52 Ala.App. 279, 291 So.2d 371; *Tucker v. State,* 50 Ala.App. 405, 279 So.2d 576; *Burleson v. State,* supra; *Wicks v. State,* 44 Ala. 398; *Eason v. State,* 48 Ala.App. 471, 265 So.2d 913.

We have carefully examined this record, as required by law, and find no error therein. The judgment is due to be and the same is hereby

Affirmed.

All the Judges concur.