[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 526 
The appellant was indicted at the October, 1970, Term of the Jefferson County Grand Jury on four charges of robbery and one charge of rape. When the case was called for trial, on April 5, 1971, the appellant was present in court with his two court-appointed attorneys, the Honorable Milton Garrett and the Honorable Louis Scholl, who each announced, "Ready for Trial." Trial was set for the following day on the rape case, which had been assigned by the court to Attorney Louis Scholl. Immediately after the jury had been qualified for trial, the defense requested, and was granted, additional time to confer with the appellant. Subsequent to the conference with his attorneys, the appellant executed an Ireland form (Court's Exhibit A, R. pp. 726, 778, 869, 914), i.e., an explanation of appellant's constitutional rights, in each case. Thereafter, the appellant entered pleas of guilty in each case and was sentenced to five consecutive life sentences. No appeal was taken from these above convictions.
In May, 1973, the trial judge dismissed the appellant's prose petition for a writ of error coram nobis. While serving his sentences, the appellant, in 1975, was charged with, and convicted of, murder in the first degree under Title 14, Section 319, Code of Alabama 1940. Punishment was fixed by the jury at death by electrocution. This cause was affirmed by this court in Harris v. State, Ala.Cr.App., 352 So.2d 460 (1977), and affirmed by the Alabama Supreme Court at 352 So.2d 479, which set the execution date for March 10, 1978.
On February 17, 1978, the trial judge denied the appellant's motion for stay of execution, which was filed contemporaneously with a petition for writ of error coram nobis in each of the five cases wherein life sentences were given.
On March 7, 1978, in the United States District Court for the Southern District of Alabama, the appellant was granted a stay of execution for a period of sixty days. On March 21, 1978, the appellant, through his volunteer counsel, amended his petition for writ of error coram nobis. A hearing on the appellant's petition was set for March 31, 1978, and subsequently continued until April 6, 1978. On that date, the appellant was represented in court by his volunteer counsel whose zealous and competent representation in this cause has been exemplary. At the conclusion of the hearing on the petition, the trial judge took the matter under consideration until April 19, 1978, when he rendered a written decree denying the petition (R. pp. 764, 810, 855, 900, 945). From the denial of his petition for writ of error coram nobis, appellant prosecutes this appeal.
 I
Appellant asserts that his right to effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution was denied him during the course of the handling of the cases which *Page 527 
culminated in his receiving five consecutive life sentences on April 6, 1971. Appellant enumerates in brief specific instances of allegedly ineffective assistance of counsel. Discussion herein of the issues raised by the allegations shall be limited to the question of whether the testimony presented at the coram nobis hearing was sufficient, as a matter of law, to entitle the appellant to a new trial.
The bench notes (Exhibits 2-6) indicate that appellant's preliminary hearing was set for September 11, 1970, on four charges of robbery and one charge of rape (R. p. 65). Attorney John Prince was appointed to represent the appellant at this stage of the proceedings. Attorney Prince testified that he made an agreement with the District Attorney to the effect that the District Attorney would open his files to the defense if the defense agreed to waive the preliminary hearing (R. pp. 105, 106).
Attorney Prince testified that appellant agreed to waive the preliminary hearing (R. p. 106). Appellant testified that he did not agree to waive the preliminary hearing (R. p. 653). Appellant argues that waiver of the preliminary hearing illustrates the ineffectiveness of appellant's counsel. Clearly, the conflict in the testimony presented a question of fact. It is not within the province of this Court to pass judgment on the truthfulness or falsity of conflicting evidence. May v. State, Ala.Cr.App., 335 So.2d 242 (1976);Snipes v. State, 50 Ala. App. 139, 277 So.2d 413 (1973).
Appellant asserts that his attorneys' failure to conduct adequate pretrial investigation is another instance illustrating his denial of the right to effective assistance of counsel. It appears from examination of Attorney Garrett's file that the bulk of his investigative effort related to the rape charge. The fact that the rape charge was to be tried first probably explains the emphasis that Attorney Garrett placed on that case. The record reveals that Attorney Garrett was appointed to defend the appellant on two robbery charges. The victim of one of the alleged robberies was also the victim in the rape case that Attorney Scholl was appointed to defend. For this reason, it is difficult to separate Attorney Garrett's investigative work on the robbery charge from his work on the rape charge. The testimony of both Attorney Garrett and Attorney Scholl indicates that they came to an understanding concerning their work on the appellant's cases (R. pp. 505, 220). Accordingly, Attorney Garrett was to handle the investigative work and Attorney Scholl was to conduct research into matters dealing with the trial itself.
Appellant makes much of the assertion that the attorneys' division of labor on the five cases was unauthorized in light of their specific appointment by the judge to individual cases. Implicit in the argument is the assumption that authorization was required for such an arrangement between the attorneys. The fallacy of the appellant's argument is that, if it was the appellant's attorneys' best judgment that a more effective and adequate defense could be given the appellant by avoiding inefficient, uncoordinated investigation and research, then to require court authorization for such an arrangement would remove a vital part of the flexibility requisite to effective, adequate representation of a defendant at trial, and to an attorney's preparation for trial. Such authorization, if required by court decree, would necessarily entail the inefficient management of an attorney's time, contrary to the client's best interest.
Appellant asserts that another element of his attorneys' ineffective representation of him was their failure to make any pretrial motions or to enter any special pleas. Appellant presented expert testimony to the effect that, under certain circumstances, pretrial motions could be crucial to the outcome of a criminal case, especially one involving arrest, search and seizure, and preindictment lineups. But none of appellant's experts could be unequivocal when asked whether it was outside the range of competence demanded of attorneys in criminal cases not to file pretrial motions. Furthermore, the testimony of Judge Gibson (R. p. 701) indicates that the practice in the Circuit Court of the Tenth *Page 528 
Judicial Circuit at the time of appellant's trial was to deal with pretrial motions at the trial on voir dire with the jury excused from the courtroom. The failure to file pretrial motions would seem, therefore, to be in conformance with the general practice locally rather than in violation of the attorneys' constitutional duties.
Appellant asserts that the failure of his appointed counsel to subpoena the medical report on the rape victim is further support for his contention that he was denied the right to effective assistance of counsel. The testimony of the appellant and both attorneys indicates that the defense to be used against the rape charge was alibi. It is a fundamental proposition that the defense of alibi does not involve a denial that the offense in question occurred. Rather, the defense asserts that the defendant was not involved with the occurrence of the offense because of his alibi which he seeks to establish through his own and others' testimony. It would seem, therefore, not unreasonable to conclude from the testimony presented that it was the appellant's attorneys' best judgment that the medical report on the rape victim was not probative of the appellant's innocence since the defense agreed to was alibi, and the medical report did not tend to establish an alibi or lend support thereto. Appellant replies that the medical report might have made the defense of consent a viable option. However, since the appellant himself asserted to his attorneys that he did not commit the offense, there would seem to be a fundamental inconsistency in the pursuit of consent as a defense under these circumstances.
Appellant asserts that failure to subpoena witnesses to appear to testify at appellant's trial is another instance which illustrates that he was denied the right to effective assistance of counsel. This conclusion is not warranted from the testimony presented in that it was the appellant's two attorneys' best judgment that the appellant's alibi witnesses were certain to be in court on the day of trial, thus rendering a subpoena unnecessary to assure their presence. Also, such subpoenas would necessarily reveal the witnesses' identity to the State. Furthermore, the testimony is in conflict as to whether the witnesses were, in fact, in court on the appointed day, April 6, 1971. Appellant testified that no alibi witnesses were present in court on the day of trial (R. p. 665). Attorneys Garrett and Scholl testified that alibi witnesses were present (R. pp. 584, 249). As hereinabove noted, it is not within the province of this Court to resolve such conflicts in the evidence. May v. State, supra. The trial court's findings are supported by the evidence.
The record reveals that Attorney Scholl's file on appellant's cases contained only seven pages of material. Furthermore, it is apparent from his testimony that Attorney Scholl's memory of important facets of his representation of appellant was extremely vague. Attorney Scholl testified that the scant materials that he produced at the coram nobis hearing in response to appellant's subpoena duces tecum were not all of his work product on appellant's cases (R. p. 301). However, he was unable to produce the missing materials after diligent search of every place where such might be found.
Appellant argues that Attorney Scholl's inability to document or to recall independently specific events in the representation of appellant seven years prior to the coram nobis hearing should lead to the conclusion that appellant was not effectively represented. It is a matter of record that, on April 6, 1971, in court, Attorney Scholl announced that he wasready for trial.
The presumption indulged by the court in a coram nobis hearing is to the effect that counsel was adequate and effective at trial. Willis v. State, 42 Ala. App. 85,152 So.2d 883 (1963).
The testimony presented does not fully, clearly, and satisfactorily overcome the presumption that Attorney Scholl was prepared for trial when he announced he was ready for trial. It is not unreasonable to conclude from the testimony that Attorney *Page 529 
Scholl was prepared for trial and later, during the seven year interval, lost or misplaced his work product. Time alone will dim memories. This Court's determination with respect to this particular allegation speaks solely to the weight of the testimony presented at the coram nobis hearing and is not intended to be a statement relating in any manner to the standards of conduct demanded of attorneys in good standing with the State Bar Association of the State of Alabama embodied in the Code of Professional Responsibility, 293 Ala. XXVII.
Appellant testified that at the trial, on April 6, 1971, during a pause in the jury selection process his attorneys informed him that no witnesses were subpoenaed, that they were not prepared for trial and that he should change his plea in order to avoid the possibility of receiving the death penalty (R. p. 667).
Appellant argues that his attorneys' inadequate investigation and preparation so narrowed his alternatives that his plea of guilty was, in effect, coerced. The testimony of Attorneys Garrett and Scholl directly contradicts appellant's account of the decision to plead guilty. According to Attorney Scholl, when he asked appellant why he wanted to change his plea, appellant said (R. p. 288):
 ". . . [T]hey have got me cold on three cases and I don't want to go through five trials."
Resolution of the conflict in the testimony, as hereinabove stated, is not the province of this Court. May v. State, supra.
The foregoing discussion of the various specific allegations in appellant's petition restated on this appeal is intended to show that appellant has failed to carry the very heavy burdenof proof demanded in a petition for writ of error coram nobis.
 "The petitioner has the burden of fully, clearly, and satisfactorily proving the allegations in his or her petition. The trial court's judgment is presumed correct as is the voluntariness of a guilty plea, the adequacy of counsel, the truth of testimony, and the legality of a search and seizure used in obtaining evidence. The degree of proof required to rebut these presumptions and to prove the allegations of the petition is the highest used in any civil action; it is `highly exacting as to proof of facts "and always means more than reasonably satisfying."'" [Footnotes omitted]
 Comment, Postconviction Remedies in Alabama, 29 Ala.L.Rev. 617, 633 (1978).
Therefore, the allegation that appellant was denied the effective assistance of counsel must be rejected as not having been established and sustained by the proof presented. We quote from the judgment of the trial court (R. pp. 771-773, 817-819, 862-864, 907-909, 952-954):
 "Each accused is entitled not only to assistance of counsel, but to effective assistance of counsel. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). As stated in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the State must appoint counsel for an accused felon if he cannot afford to hire his own attorney.
 "The same standards of representation apply whether counsel is retained or appointed. The standard of effective counsel does not guarantee an accused an attorney with whose advise he can agree nor can it be equated with a not guilty verdict. When the question arises whether an accused should plead guilty, waive a trial by jury or take the witness stand, defense counsel must be governed by and abide by the wishes of his client. Taylor v. State, 291 Ala. 756, 287 So.2d 901 "Effective assistance does not mean that counsel is not free from error. What may later seem to be error may have been a trial tactic at the time. As to what pretrial motions should be filed and other strategic and tactical decisions should be within the province of the lawyer after consultation with the client. Quoting Chief Justice Burger, who wrote while a Circuit Judge for the United States Court of Appeals, District of Columbia Circuit, `We reject the notion that it is defense counsel's duty to "make every motion in the book" in the hope that *Page 530 
one may succeed.' There is a heavy burden on petitioner to establish his claim of ineffective assistance of counsel. Harried v. U.S., 128 U.S.App.D.C. 330, 389 F.2d 281.
 "In Williams v. Beto, 354 F.2d 698, 704 (5th Cir. 1965), the Fifth Circuit Court of Appeals said:
 "`It is the general rule that relief from a final conviction on the ground of incompetent or ineffective counsel will be granted only when the trial was a farce, or a mockery of justice, or was shocking to the conscience of the reviewing court, or the purported representation was only perfunctory or without adequate opportunity for conference and preparation.'
 "See also United States v. Long, 419 F.2d 91 (5th Cir.). The petitioner in these five cases failed to advise the Trial Court as to any disagreement between said petitioner and his court appointed attorneys. "This Court holds that the petitioner has failed to carry the heavy burden to show incompetent or ineffective counsel. This Court further finds that the court appointed attorneys, Honorable Louis Scholl and Honorable Milton Garrett, were and are competent and effective defense attorneys to represent indigents in any jurisdiction. Both of these attorneys have handled numerous criminal matters competently and effectively in this Court and the five cases in question here are no exception."
 II
Appellant asserts that the court below used the wrong standards in reviewing the conduct of appellant's attorneys at trial. Appellant relies on Herring v. Estelle, 491 F.2d 125
(5th Cir. 1974), for the proposition that the determination as to whether the proceedings were rendered a farce or mockery of justice (the standard used by the court below) "is but one criterion for determining if an accused has received the constitutionally required minimum representation." Herring v.Estelle, supra, at 128.
While this Court often looks to the United States Court of Appeals for the Fifth Circuit for guidance, the holdings of that Court are regarded as persuasive authority, and we are not bound to adhere totally to same.
This Court has held that the duty of counsel, retained orappointed, is to prevent the trial from being or appearing to be a farce or mockery of justice. Gore v. State, 45 Ala. App. 146, 227 So.2d 432, cert. denied, 284 Ala. 729, 227 So.2d 435
(1969), cert. denied, 397 U.S. 966, 90 S.Ct. 1002,25 L.Ed.2d 258 (1970).
Therefore, we determine that there is no merit to the contention that the court below used the wrong standards in judging appellant's attorneys' representation. See also, Walkerv. State, Ala.Cr.App., 355 So.2d 755 (1978); Hillyer v. State, Ala.Cr.App., 351 So.2d 646, cert. denied, Ala., 351 So.2d 648
(1977); Lee v. State, Ala.Cr.App., 349 So.2d 134 (1977); Taylorv. State, 291 Ala. 756, 287 So.2d 901 (1973), cert. denied,416 U.S. 945, 94 S.Ct. 1955, 40 L.Ed.2d 298 (1974); Mills v. State,275 Ala. 217, 153 So.2d 650 (1963).
 III
Appellant argues that the lower court improperly restricted the scope of the coram nobis hearing. The result of the court's ruling was the exclusion of the following evidence:
(1) The medical report on the rape victim;
 (2) The files of the district attorney and the police;
 (3) The payment vouchers from the State Comptroller's Office to Attorneys Garrett and Scholl for cases other than appellant's case;
(4) Alibi testimony;
 (5) Testimony concerning appellant's alleged hostility toward Attorney Scholl.
In approving the lower court's ruling on the above matters, we quote from the relevant portion of the record (R. pp. 38-40): *Page 531 
 "THE COURT: The Court is well aware of the situation before it and the surrounding circumstances involving other matters pertaining to this petitioner. However, this Court is still bound by the law and I intend to follow the law in the matter. And as a matter of law and I will quote from one of the cases that accurately spells out the office of a petition for writ of error coram nobis, and it is the case of Groce vs. State. The office of the writ of error coram nobis under Alabama law is to bring to the attention of the Court for correction of error of fact; one not appearing on the face of the record, unknown to the Court or the party affected and which, if known in time, would have prevented the judgment challenged and serves as a motion for a new trial on the ground of newly discovered evidence. The writ is not intended to relieve a party from his own negligence and cannot serve as a substitute for an appeal nor to enable a defendant to question the merits of the case for which he stands convicted. With that in mind. . . .
"MR. ALLISON: What's the cite on that?
"THE COURT: That's 267 Southern 2d 499.
 "With that in mind and the case of Tollett vs. Henderson and the case of McMann vs. Richardson, the issues before us are five guilty pleas. Those five guilty pleas are a break in the chain of criminal process from the time of the offense occurring, the arrest, up to the time of trial. There must be a plea of guilty before we can proceed on this basis and I am referring only to a coram nobis that applies to pleas of guilty and not to where there had been trials. Therefore, in view of the cases, United States Supreme Court cases too, that you cannot raise independent claims to denial of constitutional rights occurred prior to the plea. You can only attack the voluntary and intelligent character of the guilty plea, such as the advice of counsel and competent counsel; third, you can refer to the judgment of the defendant and counsel to enter a plea and evaluate the State's case. You must consider the effective assistance of competent counsel and as was stated in some of the Supreme Court cases, that the defendant at times assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts and I am referring primarily to the McMann vs. Richardson case. So to reiterate, the issues before us are the petition for writ of error coram nobis is to correct an error of fact not appearing on the face of the record, unknown to the Court, unknown to the defendant at the time of the entry of the plea of guilty and had that been known, it would have changed the judgment and it amounts to a motion for a new trial on newly discovered evidence unless you can show ineffective or incompetent counsel. So with the issues as specified by this Court, this Court feels we are in a position to proceed at this time."
Accordingly, we adopt the opinion of the trial court quoted hereinafter with respect to its ruling on the scope of the coram nobis hearing in this cause (R. pp. 773-774, 819-820, 864-865, 909-910, 954-955). See, Tyson, Whither: On Habeas, 24 Ala. Lawyer 271 (1963), cited in Goodwin v. Holman,361 F.2d 403, 404 (5th Cir. 1966); Pate v. Holman, 341 F.2d 764, 768
(5th Cir. 1965); Williams v. Alabama, 341 F.2d 777, 781 (5th Cir. 1965). See generally, Burns v. Alabama, 377 F.2d 233 (5th Cir. 1967); Bland v. Alabama, 356 F.2d 8 (5th Cir. 1966); Davisv. Holman, 354 F.2d 773 (5th Cir. 1965).
 "Finally, we should address the issue of the purpose of the Writ of Error Coram Nobis in the criminal justice system. This Court has found no better words regarding this issue than those of the Supreme Court of Alabama and reiterated by the Alabama Court of Criminal Appeals and the United States District Court for the Southern District of Alabama:
 "`The office of the "writ of error coram nobis," under Alabama Law, is to bring to the attention of the Court for correction of an error of fact, one not *Page 532 
appearing on the face of the record, unknown to the Court or party affected, and which, if known in time, would have prevented the judgment challenged and serves as a motion for a new trial on the ground of newly discovered evidence. The writ is not intended to relieve a party from his own negligence, and cannot serve as a substitute for an appeal, nor to enable a defendant to question the merits of the case for which he stands convicted.' Tillis v. State, 349 So.2d 95 (1977); Groce v. State, 48 Ala. App. 709, 267 So.2d 499; Smith v. Hickson [Hixon], 149 F. Supp. 283; Smith v. State, 245 Ala. 161, 16 So.2d 315."
 IV
With respect to the remaining issues raised on this appeal, we adopt the opinion of the lower court as the opinion of this Court (R. pp. 776-774, 812-820, 857-865, 902-910, 947-955):
 "The petitioner filed Motions for Appointment of Counsel and Motions for Funds for Investigative and Hearing Purposes and for Payment of Counsel in each of the five cases. The petitioner was represented in all proceedings by volunteer attorneys who appeared and adequately and competently represented him. These attorneys have represented the petitioner in the Circuit Courts, Appellate Courts of Alabama and Federal Courts as is shown in Paragraph 4 of the Motions for Funds, etc. This Court finds that in all proceedings to date, the attorneys, Honorable William A. Allison, Honorable Eleanore Garber, Honorable W. Clinton Brown and Honorable H. Diana Hicks, have been well prepared and have adequately and competently represented the petitioner. Therefore, there was no injury or denial of due process nor denial of right to counsel to the petitioner when this Court denied the Motions for Appointment of Counsel for a Coram Nobis hearing. Ford v. U.S. (5th Cir.), 363 F.2d 437
(1966); Juelich v. U.S., 342 F.2d 29. The denial of the Motions for Funds for Investigative and Hearing Purposes and for Payment of Counsel was not a denial of due process. While some provisions are made for this in the Federal system, it is not the present situation in this state. Tillis v. State, 292 Ala. 521, 296 So.2d 892; Wheeler v. State, 47 Ala. App. 457, 256 So.2d 197; and more recently in Harris v. State, 352 So.2d 460, the Alabama Court of Criminal Appeals stated:
 "`Appellant was not denied due process where the State did not provide funds for the employment of a special investigator to aid him in procuring witnesses in his defense.' Citing Tillis v. State, supra."
 "That the petitioner had the assistance of able and competent counsel through all of these proceedings; that these volunteer attorneys protected all of the petitioner's rights through all of the proceedings; that the petitioner did in fact have experts to testify in his behalf during the proceedings; and that this Court, at the request of the petitioner, issued numerous subpoenas and Subpoenas Duces Tecum further leads this Court to find, and it is so held, that none of the petitioner's rights have been violated by the denial of the Motions for Funds.
 "As noted above, the petitioner entered Pleas of Guilty on April 6, 1971, to one case of Rape and four cases of Robbery. These pleas were entered prior to the decision in Furman v. Georgia, supra. "The petitioner by Motion and in his Petitions for Writ of Error Coram Nobis and the Amendment thereto attempted to present matters affecting the criminal processes prior to the Pleas of Guilty. As shown by Brady v. U.S., 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, a defendant might never plead guilty absent the possibility or certainty that the plea will result in a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty. In the instant cases, the petitioner entered guilty pleas and was sentenced to five consecutive life sentences as opposed to the maximum punishment of death in each case. *Page 533 
 "A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a person admits in Open Court that he is in fact guilty of the crime or crimes with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763:
 "`In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of defendant's confession.'
 "As shown by the Bench notes in each of the five cases, the defendant was asked by the Court if he had anything to say why the Court should not impose the sentence and he replied in each instance, `No Sir.' The petitioner never complained of the character of the pleas of guilty prior to Furman v. Georgia, supra [408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346]. It was only after the Furman decision that the petitioner, in 1973, filed a Pro Se Petition for Writ of Error Coram Nobis and at that time he did not complain of the advice of his court appointed attorneys. The only allegation made in his Pro Se Petition was, `Petitioner contends that he was represented in Court, by a court appointed attorney, who seemingly didn't have petitioner's interest at heart.'
 "Quoting again from McMann, supra, `What is at stake in this phase of the case is not the integrity of the state convictions obtained on guilty pleas, but whether, years later, defendants must be permitted to withdraw their pleas, which were perfectly valid when made, and be given another choice between admitting their guilt and putting the State to its proof.'
 "Once the defendant chooses to by-pass the orderly procedure for litigating his constitutional claims in order to take the benefits, if any, of a plea of guilty, the State acquires a legitimate expectation of finality in the conviction thereby obtained. Lefkowitz v. Newsome, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196; McMann v. Richardson, supra. In all criminal prosecutions there must be a finality of litigation and how more final than a valid plea of guilty where a defendant in open court with competent counsel solemnly admits to having committed the crime for which he stands charged?
 "The standard for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action opened to the defendant. North Carolina v. Henry Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). If the guilty pleas were voluntarily and intelligently made, the defendant should not be allowed to later attack the plea, even though he maintained his innocence, should he select that alternative, knowing the sentence to be less than the maximum. North Carolina v. Alford, supra. "In Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the Supreme Court of the United States held that the record must disclose that the defendant voluntarily and intelligently and understandingly entered the plea of guilty. As in the cases before this Court, the Record, Bench notes and `Court's Exhibit A,' also known as the `Ireland Form,' were sufficient record to show that the petitioner, at the time of the pleas, knowingly, intelligently and understandingly entered such pleas. Twyman v. State, 293 Ala. 75, 300 So.2d 124; Ireland v. State, 47 Ala. App. 65, 250 So.2d 602; White v. State, 54 Ala. App. 27, 304 So.2d 268.
 "As to the Preliminary Hearing, the petitioner cannot raise independent claims to denial of constitutional rights which arose prior to the guilty pleas. Lefkowitz v. Newsome, supra; Tollett v. Henderson, *Page 534 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235.
". . . .
 "On due and careful consideration of the evidence before this Court on each of the grounds of the Petitions and the Amendment thereto, separately and severally, it is the opinion of this Court that no ground of the Petitions and the Amended Petitions is well founded. It is further the opinion of this Court that the petitioner was not denied any right afforded him under the Constitution of the United States or the Constitution of the State of Alabama nor under any law thereof; that he voluntarily and intelligently and understandingly entered pleas of guilty in each case with full knowledge of all of his rights, including those he was waiving by entering said pleas; that the pleas were voluntarily, knowingly and intelligently made along with and on the advice of capable, experienced, competent and effective attorneys. It is, therefore, the opinion of this Court that the Petitions and the Amended Petitions and each ground thereof should be denied."
After careful consideration of the Five Volume Record involved in this appeal, we are of the opinion that this case is due to be, and is hereby
AFFIRMED.
All the Judges concur.